VICK LAW GROUP, APC
  Scott Vick (SBN 171944)
  Catherine B. Kim (SBN 201655)
800 West Sixth Street, Suite 1220
Los Angeles, California 90017
Telephone:  (213) 784-6227
Facsimile:   (213) 784-6226
E-Mail:    scott@vicklawgroup.com
           catherine@vicklawgroup.com

Attorneys for Plaintiff
HANNAFORD ENTERPRISES, LLC,
a Delaware Limited Liability Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| HANNAFORD ENTERPRISES, LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>       v.<br><br>ROBERT R. WEAKLEY, an individual, and INDUS HOLDING COMPANY, a Delaware corporation,<br><br>                    Defendants. | CASE NO.: 5:16-cv-04048<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff Hannaford Enterprises, LLC ("Plaintiff" or "Hannaford") alleges as follows:

## SUMMARY OF THIS ACTION

1. In January 2015, Defendant Robert Weakley set out to raise $3 million in a private offering for a Salinas-based start-up company (called Defendant Indus Holding Company ("Indus" or the "Company")). Indus, together with several other related entities that Indus created and controlled (including Altai brands), was in the business of manufacturing and selling cannabis infused edibles (including bonbons, lozenges, chocolate bars and truffles) and licensing related intellectual property related to the cannabis business.

2. Beginning in January 2015, to lure and defraud unsuspecting investors, Weakley (on behalf of himself and Indus) falsely represented orally and in writing to prospective investors including Plaintiff that Weakley had personally invested $574,250 into the Company. Specifically, Weakley represented that he personally invested ***$250,000 in cash,*** plus additional non-cash consideration with a fair market value of $324,250 (for total consideration of $574,250). Weakley's supposed personal "investment" represented approximately 20% of the total amount of money that Weakley and Indus sought to raise in a Series "A" round of financing from wealthy and unsuspecting investors residing mostly in the Monterey, California area, and 40% of all of the outstanding stock. For Weakley's supposed investment which turned out to be fictitious, Weakley obtained 5,742,500 shares of the Company's common stock.

3. Weakley knew that it would be important and highly material to prospective investors to know that he (as the founder and CEO of the Company) had made a sizeable personal ***cash*** investment of $250,000 into the Company, in addition to $324,250 worth of non-cash contributions. This was a material representation because all else being equal, investors like Plaintiff take comfort and often prefer to invest in companies where a founder has placed a substantial amount of his own cash equally at risk to the investor's cash.

4. Plaintiff was one of the unsuspecting investors duped by the false representations and omissions of Weakley and Indus. On or about February 13, 2015, and based in part on Weakley's reportedly sizeable personal investment, which supposedly included $250,000 in cash,

and Weakley's and Indus's materially false financial projections, Plaintiff purchased 1,322,751 shares of Indus Series A Preferred stock for $750,000.  At the time of its investment, Plaintiff was, and remains today, Indus's largest single investor, together with one other investor who invested the same amount of money.

5. As part of his effort to conceal his fraud from investors including Plaintiff, Weakley fired the company's CFO (Joe Halligan) after only four months, and refused to hire a new CFO despite there being qualified, able, and willing candidates to fill the position.

6. Weakley then drained the company of investor money, using the company's money as if it were his own personal piggy bank.  Instead of timely paying the company's vendors (including the law firm of Morgan Lewis) who endured long periods of time without payment, Weakley lavished himself with cash to live an opulent lifestyle.  For example, the company paid for a private air service (Surf Air), which Weakley frequently used for personal and family purposes without reimbursing the company.  Weakley also used company funds to pay his personal legal bills (including the costs of defending against a separate securities fraud lawsuit filed against him).  And, despite the company being strapped for cash and not paying vendors, when Weakley travelled, he stayed only at posh hotels the company could not afford like the Penninsula Hotel, the L'Ermitage Hotel in Beverly Hills, and the Four Seasons.

7. By November 2015, when the Company was starved for cash, Plaintiff became aware that, contrary to Weakley's representations, Weakley had not invested $250,000 in cash, and his "non-cash" investment was not worth anything near $324,250.  In fact, Weakley did not even have $250,000 in cash at the time he and Indus represented that he had invested that cash in the Company (or since then).  In effect, Weakley fabricated his fictitious personal investment in the Company out of whole cloth, and circulated capitalization tables showing that he owned 39% of the Company based on a contribution he never made.

8. Had Plaintiff known the truth, Plaintiff would not have invested.  Indeed, after the truth was revealed, during a November 2015 board meeting, one of the Company's directors told

Weakley that some or all of the investors would not have made their investment if they knew he did not have any "skin in the game" in the form of a sizeable, personal cash investment.

9. By this action, Plaintiff seeks compensatory damages for all damages it has sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest and attorneys fees and costs.

## JURISDICTION AND VENUE

10. This action arises under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and § 27 of the Exchange Act, 15 U.S.C. § 78aa. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).

12. Defendant Indus maintains its principal place of business within this District, and Defendants' conduct and/or conducted business in this District, and many of the acts giving rise to the violations alleged herein, including the preparation and dissemination of materially false and misleading information and omissions, occurred in substantial part in this District. Defendant Weakley also resides in this District.

13. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, mail and interstate telephone communications.

## THE PARTIES

### A. Plaintiff

14. Plaintiff Hannaford Enterprises, LLC ("Plaintiff" or "Hannaford") is a limited liability company whose principal place of business is located at 14555 West Indian School Road, Goodyear, Arizona 85935. On or about February 13, 2015, Plaintiff purchased 1,322,751 shares of Indus Series A Preferred stock for $750,000 and suffered damages as a result of the federal securities law violations alleged herein.

**B.     Defendants**

15.    Defendant Indus Holding Company ("Indus" or the "Company") is Delaware corporation with its principal place of business located at 20 Quail Run Circle, Unit B, Salinas, California 93907.

16.    Defendant Robert R. Weakley is an individual residing at 11538 Saddle Road, Monterey, California 93940, and at all relevant times herein, was one of the Company's founders, its CEO, and a member of the board of directors.  Defendant Weakley made the false statements and omissions as set forth herein.

## DEFENDANTS' FRAUD

17.    Defendants' fraud began with their creation of several corporate documents which falsely represented that, in January 2015, Weakley had personally purchased 5,742,500 shares of the Company's common stock for $574,250, which included $250,000 in cash from Weakley, plus non-cash consideration by him with a fair market value of $324,250.

18.    The first fraudulent document Indus and Weakley created, which was distributed to prospective investors, was a "Restricted Stock Purchase Agreement" ("Purchase Agreement"), entered into on or about January 20, 2015, between Weakley and the Company.

19.    Under the Purchase Agreement, Weakley agreed to purchase 5,742,500 shares of the Company's common stock (at the price of ten (10) cents per share) for consideration with a purported value of $574,250, consisting of both cash and non-cash components.  The Purchase Agreement provided that the "purchase price shall be paid by the transfer of certain assets from [Weakley] to the Company as set forth on *Exhibit A* attached hereto and incorporated herein by reference."  (Purchase Agreement, ¶ 1).

20.    The Purchase Agreement provided that Weakley was required to pay for the 5,742,500 shares of stock "simultaneously with the execution and delivery" of the Purchase Agreement (which the agreement defines as the "Purchase Date"), which was January 20, 2015. Therefore, the Purchase Agreement required Weakley to pay in full for his shares, including the $250,000 in cash, by no later than January 20, 2015.

21.     Weakley made a point of emphasizing to investors – in order to fraudulently induce them to invest in the Company – that he had made a $250,000 cash investment in the company.  On one occasion, Weakley lied directly to Plaintiff during a conversation when Weakley told Plaintiff's principal John Knight and others – prior to Plaintiff's $750,000 investment in the Company – that Weakley had personally invested $250,000 cash in the Company (supposedly in connection with the purchase of a building for the manufacture of the edibles).  That was an outright lie.  But Weakley's lies did not stop there.  Weakley also sent e-mails (and/or permitted others to send emails) to investors wherein he repeatedly lied about the fact that he had made a $250,000 personal cash investment in the Company.

22.     Plaintiff is informed and believes and on that basis avers that Weakley did not have – and knew he did not have – $250,000 in cash on January 20, 2015 when Weakley claimed to have made the investment in the Company, or at any time since then.  Thus, Defendants' representations to investors including Plaintiff (about Weakley's supposed $250,000 cash investment) were knowingly false.  Moreover, because Weakley did not pay for the Company's stock, he also falsely represented to investors including Plaintiff that he was a substantial stockholder of the Company (owning 39% of the company), and thereby used his fraudulent activity to maintain control over the Company.

23.     Because a portion of the purchase price consisted (supposedly) of $324,250 worth of non-cash items contributed by Weakley, the Purchase Agreement required that Weakley pay for the shares of stock by delivering to the Company on the closing date of January 20, 2015, a signed Intellectual Property Assignment Agreement ("Assignment Agreement").  The Assignment Agreement required that Weakley assign his interest in the non-cash items (and also reiterated Weakley's obligation to provide the $250,000 cash to the Company).

24.     Because the Purchase and Assignment Agreements valued Weakley's non-cash contributions at $324,250, Indus and Weakley represented that the fair market value of that non-cash consideration was $324,250.  In truth and fact, it was worth little or nothing.  Defendants knowingly misrepresented to investors including Plaintiff the supposedly fair market value of

Weakley's non-cash contribution, on which Plaintiff relied in making its investment in the Company.

25. In addition, Weakley provided materially false and misleading financial projections and other information, which he knew, or was reckless in not knowing, were materially false or which omitted material information to make the representation not misleading.

## CLAIMS FOR RELIEF

## COUNT I

## For Violation Of § 10(b) Of The Securities Exchange Act And SEC Rule 10b-5 Against Weakley and Indus

26. Plaintiff incorporates by reference each and every allegation contained above, as if set forth herein.

27. This claim is brought by Plaintiff pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants Weakley and Indus.

28. As set forth above, Defendants made materially false and misleading statements and omissions that were intended to, and did, deceive Plaintiff, as alleged above. Defendants, and each of them took the actions set forth herein.

29. Defendants Weakley and Indus: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiff in an effort to induce Plaintiff to invest in Indus in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5. All Defendants are legally responsible as primary participants in the wrongful and illegal conduct charged herein, and Weakley is also legally responsible as controlling person as set forth in Count II below.

30. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or mail, engaged and participated in a continuous

course of conduct to dissimmenate material false statements and to conceal adverse material information about the business, operations and future prospects of Indus as specified herein.

31. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the truth in that they failed to ascertain and to disclose such facts. Such Defendants' material misrepresentations and omissions were done knowingly or with deliberate disregard for the purpose and effect of inducing Plaintiff to invest in Indus at an artificially inflated price.

32. In ignorance of Defendants' materially false statements and omissions set forth above and relying directly or indirectly on the false and misleading statements made by Defendants, Plaintiff acquired stock at artificially high prices and was damaged thereby.

33. At the time of said misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true. Had Plaintiff known the truth regarding Weakley and Indus, which was not disclosed by Defendants, Plaintiff would not have purchased or otherwise acquired their Indus common stock, or, if they had acquired such common stock, they would not have done so at the artificially inflated prices which they paid.

34. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

35. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with its purchase of Indus common stock.

## COUNT II

### For Violation Of § 20(a) Of The Securities Exchange Act Against Weakley and Indus

36. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

37. Defendant Weakley acted as controlling persons of Indus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position, his ownership and contractual rights, participation in and awareness of Indus's operations, and

1  intimate knowledge of the fraudulent scheme and the false financial information provided to
2  Plaintiff, Weakley had the power to influence and control, and did influence and control, directly
3  or indirectly, the decision-making of Indus, including the content and dissemination of the
4  various statements which Plaintiff contends were false and misleading.  Defendant Weakley was
5  provided with, or had unlimited access to, Indus's documents and financial records alleged by
6  Plaintiff to be misleading prior to and shortly after these statements were made and had the
7  ability to prevent the issuance of the statements or cause the statements to be corrected.

8    38. In particular, Weakley had direct and supervisory involvement in the day-to-day
9  operations of Indus and, therefore, is presumed to have had the power to control or influence the
10 particular transactions giving rise to the securities violations as alleged herein, and exercised the
11 same.  For example, Weakley was able to and did control the content of the various written
12 materials provided to Plaintiff prior to its investment.

13   39. Weakley participated in the drafting, preparation, and/or approval of false
14 information provided to Plaintiff, as well as other communications alleged herein.

15   40. As set forth above, Weakley violated Section 10(b) and Rule 10b-5 by his acts and
16 omissions as alleged in this Complaint.  By virtue of his position as controlling person, the
17 Weakley is also liable to Plaintiff pursuant to Section 20(a) of the Exchange Act.  As a direct and
18 proximate result of Weakley's wrongful conduct, Plaintiff suffered damages in connection with
19 its purchase of Indus stock.

20 **COUNT III**
21 **For Declaratory Relief**
22 <u>**Against Weakley and Indus**</u>

23   41. Plaintiff repeats and re-alleges each and every allegation contained above as if
24 fully set forth herein.

25   42. An actual controversy has arisen and now exists between Plaintiff, on the one
26 hand, and Defendants on the other, concerning the amount of stock that Weakley owns in the
27 Company.  Defendants contend that Weakley owns 5,742,500 shares of the Company's common
28

stock. Plaintiff contends that, as a result of the allegations above, Weakley does not own any of the Company's stock.

43. Plaintiff requests a judicial determination of the amount of stock that Weakley owns in the Company, and a declaration that Weakley does not own any of the Company's stock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Awarding compensatory damages in favor of Plaintiff for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B. Awarding Plaintiff its reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

C. Issuing a declaratory judgment stating that Weakley does not own any of the Company's stock; and

D. Awarding such other and further relief as the Court may deem just and proper.

Dated: July 18, 2016                    Respectfully submitted,

VICK LAW GROUP, APC


    /s/ Scott Vick
     SCOTT VICK

SCOTT VICK (Bar No. 171944)
(scott@vicklawgroup.com)
CATHERINE B. KIM (Bar No. 201655)
(catherine@vicklawgroup.com)
800 W. 6th Street, Suite 1220
Los Angeles, CA 90017
Tel:   (213) 784-6225
Fax:   (213) 784-6226

*Attorneys for Plaintiff*
*HANNAFORD ENTERPRISES, LLC*

# JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 18, 2016                                   Respectfully submitted,

VICK LAW GROUP, APC


 */s/ Scott Vick*
SCOTT VICK

SCOTT VICK  (Bar No. 171944)
(scott@vicklawgroup.com)
CATHERINE B. KIM (Bar No. 201655)
(catherine@vicklawgroup.com)
800 W. 6th Street, Suite 1220
Los Angeles, CA 90017
Tel:     (213) 784-6225
Fax:    (213) 784-6226

*Attorneys for Plaintiff*
*HANNAFORD ENTERPRISES, LLC*

**COMPLAINT**